# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

LORILLARD TOBACCO COMPANY, a
foreign corporation,

                    Plaintiff,

v.

VAN DYKE LIQUOR MARKET, INC., a
Michigan corporation,

                    Defendant.

_____ /

Case Number: 05-71050

JUDGE PAUL D. BORMAN
UNITED STATES DISTRICT COURT

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF LORILLARD TOBACCO COMPANY'S MOTION FOR SUMMARY JUDGMENT AS TO LIABILITY(DOCK. NO. 24)

Now before the Court is Plaintiff Lorillard Tobacco Company's Motion for Summary Judgment as to Liability (Dock. No. 24). The Court held a motion hearing on November 22, 2006. Having considered the entire record, and for the reasons that follow, the Court GRANTS IN PART and DENIES IN PART Plaintiff's Motion for Summary Judgment as to Liability.

I.      **FACTS**

Plaintiff Lorillard Tobacco Company ("Plaintiff" or "Lorillard") is a Delaware corporation which manufactures and sells cigarettes in the United States. (Compl. ¶ 6). Defendant Van Dyke Liquor Market, Inc. ("Defendant" or "Liquor Market") is a Michigan corporation. (Compl. ¶ 7).

1

Plaintiff manufactures its cigarettes in North Carolina[1] and distributes them throughout the country via a network of wholesalers and retailers. (Compl. ¶ 8). Plaintiff has been using the NEWPORT trademark since the mid-1950s and incorporates its trademarks into its cigarettes and cigarette packaging. (Compl. ¶ 9).

Plaintiff holds federal registrations for the following marks (the "marks"): LORILLARD, NEWPORT, NEWPORT (stylized), Spinnaker Design, and NEWPORT and design. (Pl.'s Br. Ex. 3, Certifications of Registration).

In October of 2003, Defendant contracted with Plaintiff to receive reimbursements and product offers from Plaintiff in exchange for displaying Plaintiff's marketing and advertising materials on the premises. (Def.'s Resp. 1).

On March 11, 2005, Plaintiff's Sale Representative Angela Daniels ("Daniels") visited Defendant to check its inventory of NEWPORT brand cigarettes. (Pl.'s Br. 3). During the routine inventory check, Daniels noticed approximately sixty packs of NEWPORT brand cigarettes that looked counterfeit. (Pl.'s Br. Ex. 4, Daniels Dep. 30:8-10). Under the guise that the packs were old, Daniels exchanged a carton of cigarettes (ten packs) and replaced them with NEWPORT 100s. (Pl.'s Br. Ex. 4, Daniels Dep. 28:6-11). Of the ten packs of cigarettes taken from Defendant, two of them were suspected counterfeit packs, and the remaining eight were regular soft-pack NEWPORTS, and medium and light NEWPORT soft packs. (Pl.'s Br. Ex. 4, Daniels Dep. 26:4-20).

---

[1] Greensboro, North Carolina is Plaintiff's principal place of business. (Compl. ¶ 6).

After getting Defendant's representative to sign off on a S-26-A form[2] (*See* Pl.'s Br. Ex. 6), Daniels left Defendant to obtain additional NEWPORT inventory. (Pl.'s Br. 3). Daniels met with another sales representative to obtain the additional inventory and then returned to Defendant's location the same day. (*Id*.). During her second visit to Defendant, Daniels attempted to gain additional counterfeit inventory and exchange it with genuine NEWPORT 100s. Daniels claims that Ablahad Bahoura became agitated during this process and, though he signed the exchange form, insisted that he purchase the genuine product from Daniels instead of receiving the genuine product via an exchange. (*Id*.). According to Daniels, she attempted to leave Defendant's premises with her copies of the exchange form and the suspected counterfeit cigarettes. (*Id*. at 4). However, Bahoura took the cigarettes from her, crumpled up his exchange forms, and replaced the cigarettes that Daniels had removed back on the shelf. (*Id*.). Daniels also contends that Bahoura informed her he was having a bad day, pushed her out of the store, told her not to speak about the incident, and admitted that he bought some bad cigarettes from someone off the street. (*Id*.).

Defendant claims that it was Daniels who was having a bad day, and that when she noticed Defendant was short on most cigarettes, offered to exchange milds and lights for a carton of 100s. (Def.'s Resp. 4). Although Bahoura informed Daniels that he just sent someone out to buy cigarettes from the wholesaler, Daniels left ten packs of 100s and took five medium and five lights. (*Id*.). Defendant contends that Daniels returned to the store that day claiming that she left the carton of cigarettes form her prior visit in the store. (*Id*.). Bahoura believed that Daniels

---

[2] An S-26-A form is the Lorillard form that a retailer signs off on when there is an exchange of any type of produce in the store, or if a cash sale of cigarettes is made. (Pl.'s Br. Ex. 4, Daniels Dep. 29:8-13).

took the cigarettes with her upon leaving the premises on her first visit, but looked for the cigarettes anyway. (*Id*.). Defendant alleges Bahoura ordered Daniels out of the store, but at no time did he push her or take cigarettes from her. (*Id*. at 5).

Daniels reported the incident to her supervisor, Michael McCord ("McCord"), a Division Manager. (Pl.'s Br. 4). McCord returned Defendant's location on March 13, 2005, with another Division Manager, Jeffrey Bullock. Bullock went into the store and purchased a package of NEWPORT King cigarettes in the soft pack, as if he was a customer. (*Id*.). The cigarettes taken from Defendant by Daniels, and the pack of cigarettes bought by Bullock, were forwarded to Plaintiff's corporate headquarters for inspection. (*Id*.). The inspection confirmed that all three packs of cigarettes were counterfeit. (*Id*.).

Upon this confirmation, Plaintiff filed a six-count Complaint on March 17, 2005.[3] On the same day, Plaintiff also filed a Motion for Ex Parte Seizure Order, Temporary Restraining Order, which this Court granted. Subsequently, Plaintiff did not find any packs of counterfeit NEWPORT brand cigarettes on Defendant's premises during the execution of the Seizure Order. Upon stipulation of the parties, the Court entered an Order for a Preliminary Injunction, Terminating the Protective Order and Exonerating Bond on March 31, 2005.

On May 18, 2005, Defendant answered the Complaint. The instant Motion for Summary Judgment as to Liability was filed on July 18, 2006. Defendant responded on September 13,

---

[3]

| Count I: | Trademark Counterfeiting and Infringement, 15 U.S.C. § 1114(1) |
|---|---|
| Count II: | Federal Unfair Competition and False Designations of Origin, and False and Misleading Representations, 15 U.S.C. § 1125(a) |
| Count III: | Trademark Dilution, 15 U.S.C. § 1125(c) |
| Count IV: | Common Law Unfair Competition |
| Count V: | Statutory Unfair Competition, MCL 429.42(a) |
| Count VI: | Michigan Consumer Protection Act, MCL 445.903 |

4

2006.  On September 26, 2006, Plaintiff filed its reply.

Plaintiff argues that summary judgment is appropriate on its Trademark Counterfeiting and Infringement because: (1) Plaintiff is the owner of the trademarks; (2) Defendant's use of the trademarks is likely to cause confusion because Plaintiff's trademarks are strong; (3) Defendant's cigarettes appear identical and are similar to Plaintiff's NEWPORT brand of cigarettes; and (4) the marketing channels are also similar.  Plaintiff argues that summary judgment is appropriate on its Unfair Competition and False Designations of Origin, and False and Misleading Representations claim.  Plaintiff contends that it need only establish that Defendant's false designation hinders Plaintiff's ability to conduct its interstate business.  Plaintiff avers that summary judgment is appropriate on its Dilution claim because: (1) Plaintiff owns the marks; (2) the Defendant is making a commercial use of the mark in commerce; and (3) the Defendant's mark dilutes the famous mark.  Plaintiff asserts that summary judgment is appropriate on its state law claims because the standards are similar to those used for federal trademark infringement.  Plaintiff also contends that Defendant's sale/offering of counterfeit NEWPORT brand cigarettes was done willfully or with a reckless disregard for Plaintiff's trademarks, thereby increasing the statutory damages.

Defendant responds that Plaintiff is not entitled to summary judgment on its claims of counterfeiting and trademark infringement.  Defendant asserts that there is an issue of fact as to Defendant's use of the trademark.  Defendant argues that under the summary judgment standard, the Court should believe Mr. Bahoura's testimony.  Defendant contends that although Daniels stated that she gave two counterfeit cigarette packs to McCord, the Chain of Custody form does not reflect that transfer.  Defendant also suggests that McCord had access to other counterfeit

cigarettes at the same time he was in possession of the Defendant's alleged counterfeit cigarettes. Defendant argues that no issues of fact exists regarding Defendant's sale of the three counterfeit cigarette packs or whether Defendant's conduct was wilful.

Regarding the remaining claims, Defendant argues that: (1) the alleged sale in this cause does not have the same economic effect of that in *Johnson v. Jones*, 1149 F.3d 494, 502 (6th Cir. 1998) and thus Plaintiff's false designation claim should be denied; (2) Plaintiff has not shown actual proof of dilution; (3) the case law Plaintiff cites in support of its Michigan common law claim only relate to injunctive relief and Defendant stipulates to a permanent injunction; (4) Plaintiff has presented no evidence that Defendant derived any profit or that Plaintiff suffer any damages to recover under Mich. Comp. Law section 449.42; and (5) Plaintiff does not have standing to use under the MCPA.

Plaintiff replies that counterfeit cigarettes were found in Defendant's inventory and were sold to an employee of Plaintiff.  Plaintiff contends that instead of presenting evidence that creates a dispute of a material fact concerning whether Defendant sold counterfeit cigarettes from its inventory, Defendant argues that Plaintiff's chain of custody is flawed.  Contrary to Defendant's argument, Plaintiff asserts that the chain of custody was established and Defendant offered no contrary evidence.  Plaintiff supports its position by stating that McCord was with Daniels and Bullock when the paper work was sent out, and therefore there is no chain of custody issue.  Further, Plaintiff argues that Defendant offers no evidence that the counterfeit cigarettes were not discovered on Defendant's premises.  Plaintiff believes that Defendant must show more than a meta-physical doubt it tries to create by arguing that McCord had access to other counterfeit cigarettes.

6

Plaintiff avers that Defendant's conduct was willful because it has show that Defendant deviated from its normal purchasing patterns just before the discovery of the counterfeit cigarettes.  While Defendant attempts to explain the purchasing pattern by arguing that the wholesaler was out of the type of cigarette discovered to be counterfeit, Defendant does not proffer evidence from its wholesaler or affidavits to support its position.  Additionally, Plaintiff asserts that the burden of policing inventory falls on the retailer and not the manufacturer. Plaintiff also argues that Defendant does not attempt to refute that it sold cigarettes found to be counterfeit to a customer who was Plaintiff's employee.

Plaintiff also replies that summary judgment is appropriate on its false designation claim because Plaintiff established that Defendant's false designation hinders Plaintiff's ability to conduct interstate business.  Plaintiff claims that summary judgment is appropriate on its dilution claim because the junior and senior marks are identical.  Plaintiff asserts that summary judgment is appropriate on its MCPA claim because a business entity can maintain such a claim and the test is still whether confusion is likely.

## III.     ANALYSIS

### A.     Standard of Review

Pursuant to Federal Rule of Civil Procedure 56, a party against whom a claim, counterclaim, or cross-claim is asserted may "at any time, move with or without supporting affidavits, for a summary judgment in the party's favor as to all or any part thereof."  Fed. R. Civ. P. 56(b).  Summary judgment is appropriate where the moving party demonstrates that there is no genuine issue of material fact as to the existence of an essential element of the non-moving party's case on which the nonmoving party would bear the burden of proof at trial.  *Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

> Of course, [the moving party] always bears the initial
> responsibility of informing the district court of the basis for its
> motion, and identifying those portions of "the pleadings,
> depositions, answers to interrogatories, and admissions on file,
> together with the affidavits, if any," which it believes demonstrate
> the absence of a genuine issue of material fact.

*Id*. at 323; *Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir. 1987).

A fact is "material" for purposes of a motion for summary judgment where proof of that fact "would have [the] effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties." *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984) (quoting BLACK'S LAW DICTIONARY 881 (6th ed. 1979)) (citations omitted). A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the non[-]moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Conversely, where a reasonable jury could not find for the non-moving party, there is no genuine issue of material fact for trial. *Id.*; *Feliciano v. City of Cleveland*, 988 F.2d 649, 654 (6th Cir. 1993). In making this evaluation, the court must examine the evidence and draw all reasonable inferences in favor of the non-moving party. *Bender v. Southland Corp.*, 749 F.2d 1205, 1210-11 (6th Cir. 1984).

If this burden is met by the moving party, the non-moving party's failure to make a showing that is "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial" will mandate the entry of summary judgment. *Celotex*, 477 U.S. at 322-23. The non-moving party may not rest upon the mere allegations or denials of his pleadings, but the response, by affidavits or as otherwise provided in Rule 56, must set forth specific facts which demonstrate that there is a genuine issue for trial.

8

FED. R. CIV. P. 56(e). The rule requires that non-moving party to introduce "evidence of evidentiary quality" demonstrating the existence of a material fact. *Bailey v. Floyd County Bd. of Educ.*, 106 F.3d 135, 145 (6th Cir. 1997); *see also Anderson*, 477 U.S. at 252 (holding that the non-moving party must produce more than a scintilla of evidence to survive summary judgment).

**B.      Discussion**

Plaintiff's Complaint alleges that Defendants are liable for trademark infringement under the Lanham Act, 15 U.S.C. § 1114(1)(a), and unfair competition under the Lanham Act, 15 U.S.C. § 1125(a), dilution under 15 U.S.C. § 1125(c), and Michigan state law claims.

Section 1114 protects a trademark owner from any unauthorized uses that are likely to cause confusion, cause mistake, or to deceive. 15 U.S.C. § 1114(1). Thus, to prevail on an unfair competition or trademark infringement claim under the Lanham Act, the plaintiff must demonstrate a likelihood of confusion. *Frisch's Rests. Inc. v. Elby's Big Boy of Steubenville, Inc.*, 670 F.2d 642, 647 (6th Cir. 1982).

**1.      Trademark Infringement**

Under 15 U.S.C. § 1114(1):

Any person who shall, without the consent of the registrant–

> (a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale distribution, or advertising of any goods or services on or in connection with which such use is *likely to cause confusion*, or to cause mistake, or to deceive.

15 U.S.C. § 1114(1)(a) (emphasis added). In determining whether an alleged infringement constitutes a likelihood of confusion, the Sixth Circuit considers the following factors:

(1)      Strength of plaintiff's mark;
(2)      Relatedness of the goods;

9

(3)     Similarity of the marks;
(4)     Evidence of actual confusion;
(5)     Marketing channels used;
(6)     Likely degree of purchaser care;
(7)     Defendant's intent in selecting the mark;
(8)     Likelihood of expansion of the product lines.

*Wynn Oil Co. v. Thomas,* 839 F.2d 1183, 1186 (6th Cir. 1988). "[A] showing of intent is not required to demonstrate the likelihood of confusion. While a 'defendant's intent' is one of the eight factors noted above, it is considered only in the sense that its existence can "strengthen[] the likelihood of confusion." *Lorillard Tobacco Co. v. Amouri's Grand Foods, Inc*., 453 F.3d 377, 381 (6th Cir. 2006).

> While a showing of "likelihood of confusion" does require that consumers mistakenly believe that the infringing goods were "sponsored or otherwise approved" by the plaintiff there is no further requirement that those goods must have been produced by the defendant. Indeed, all the statutes demand is that the defendant have "used" the goods "in commerce" (Sections 1114(1)(a) and 1125(a)), and we can think of no clearer "use" of goods "in commerce" than offering them for sale. In sum, as the Seventh Circuit has put it concisely, "[s]ellers bear strict liability for violations of the Lanham Act" (*Hard Rock Café v Licensing Corp. v. Concession Servs., Inc*., 955 F.2d 1143, 1152 n.6 (7th Cir. 1992)), and we too decline to excuse Grand Foods from liability due either to its ignorance or to its role as a retailer rather than producer of the counterfeit goods.

*Id*. (citations omitted). A plaintiff does not need to address every factor in order to prevail. *Wynn Oil*, 839 F.2d at 1186.

### a.     Strength of the Mark

"The strength of a mark is a factual determination of the mark's distinctiveness. The more distinct a mark, the more likely is the confusion resulting from its infringement, and therefore the more protection it is due." *Frisch's Rests. Inc. v. Shoney's Inc.,* 759 F.2d 1261, 1264 (6th Cir. 1985). Plaintiff's trademarks are strong trademarks, in that the public readily accepts them as hallmarks of the Lorillard Tobacco Company. *See id*. It is also unique because

10

the marks have been the subject of wide and intensive advertisements, and the NEWPORT brand

has been developed into a highly distinctive mark.  This factor favors a likelihood of confusion.

### b.        Relatedness of the Goods

Regarding relatedness, cases fit into one of three categories: (1) cases where the parties

compete directly by offering their goods or services; (2) cases where the goods or services are

somewhat related but not competitive; and (3) cases where the goods or services are totally

unrelated. *See Champions Golf Club v. Champions Golf Club*, 78 F.3d 1111, 1118 (6th Cir.

1996).  "[Services and goods] are 'related' not because they coexist in the same broad industry,

but are 'related' if the services are marketed and consumed such that buyers are likely to believe

that the services, similarly marked, come from the same source, or are somehow connected with

or sponsored by a common company."  *Homeowners Group v. Home Mktg. Specialists, Inc*., 931

F.2d 1100, 1109 (6th Cir. 1991). "The question is, are the [goods or services] related so that they

are likely to be connected in the mind [] of a prospective purchaser?"  *Id.*

It is undisputed that goods in question are identical, as they are both cigarettes.

Additionally, both Plaintiff's cigarettes and the counterfeit cigarettes are directly competing.

Therefore, the Court finds that this factor favors Plaintiff.

### c.        Similarity of the Marks

"Similarity of marks is a factor of considerable weight."  *Daddy's Junky Music Stores,*

*Inc. v. Big Daddy's Family Music Ctr.*, 109 F.3d 275, 283 (6th Cir. 1997).  "The appearance of

the litigated marks side by side in the courtroom does not accurately portray market conditions."

*Homeowners Group*, 931 F.2d at 1106.  "Rather, courts must determine whether a given mark

would confuse the public when viewed alone, in order to account for the possibility that

11

sufficiently similar marks 'may confuse consumers who do not have both marks before them but who may have a general, vague, or even hazy, impression or recollection of the other party's mark.'" *Daddy's*, 109 F.3d at 283 (internal citations omitted).

The trademarks at issue are virtually identical. There are only minor differences, such as the tint of the wrapping. This factor points towards a likelihood of confusion.

### d.    Evidence of Actual Confusion

"Evidence of actual confusion is undoubtedly the best evidence of likelihood of confusion. Due to the difficulty of securing evidence of actual confusion, a lack of such evidence is rarely significant, and the factor of actual confusion 'is weighted heavily only when there is evidence of past confusion, or perhaps, when the particular circumstances indicate such evidence should have been available.' *Daddy's*, 109 F.3d at 283 (internal citations omitted). "[A] successful Lanham Act plaintiff only must show a sufficient potential of confusion." *Daddy's*, 109 F.3d at 285. In the instant case, the similarity between the genuine and counterfeit products, plus the relatedness of the product, create a high likelihood of confusion. Thus, the Court find that this factor favors Plaintiff.

### e.    Marketing Channels Used

The Market Channels "factor . . . consists of considerations of how and to whom the respective goods or services of the parties are sold. This factor involves two considerations: (1) whether the parties use the same means to market the product, and (2) whether the 'predominant customers' are the same." *GMC v. Keystone Auto. Indus.*, 453 F.3d 351, 357 (6th Cir. 2006). Here, the parties use the same means to market the product (the Liquor Market), and their customers are identical. This factor favors Plaintiff.

12

**f.      Likely Degree of Purchaser Care**

The less attention a consumer gives to the purchase of the services at issue, the greater the likelihood of confusion between marks. *Wynn Oil*, 839 F.2d at 1188.  The standard is of a typical buyer exercising ordinary caution.  *Homeowners Group*, 931 F.2d at 1111.  When the purchaser has expertise or when services are expensive or unusual, a higher standard is proper. *Id*.            Cigarette buyers use a low degree of care as a typical buyer is not sophisticated nor has expertise in cigarettes.  A cigarette purchaser naturally would assume that he/she is receiving an authentic cigarette product.   As a result, this factor should favor Plaintiff.

Instead of addressing the above factors, Defendant argues that a likelihood of confusion is that an issue of facts exists whether Defendant used the trademark under 15 U.S.C. § 1114(1). Defendant points out that Bahoura testified Defendant did not have NEWPORT softs in stock because the wholesalers were out of that product.  Defendant asserts that Plaintiff's chain of custody form does not indicate that Daniels gave the two alleged counterfeit packs to McCord. Defendant also argues that Bahoura admits he bought NEWPORTS from an authorized distributor on March 11, 2005, and then sold them to the public.  However, Defendant avers that if the Court believes that Bullock bought one pack of counterfeit cigarettes from Defendant on March 13, 2005, even though Plaintiff does not have the proper chain of custody, then Defendant contends it was totally unaware that the pack purchased by Bullock, or any other pack, were counterfeit.  Defendant also states that McCord, who was in possession of the three counterfeit packs allegedly taken or purchased from Defendant, also had access to other counterfeit cigarettes.

The Court does not agree that, taking the facts in a light most favorable to the non-

moving party, Defendant only bought cigarettes from authorized wholesalers. Defendant has not

provided any explanation for how it came into possession of counterfeit cigarettes. Moreover,

Defendant has not explained why it sold counterfeit cigarettes. Defendant only argues that there

is a problem with the Chain of Custody form, and that McCord had access to other counterfeit

cigarettes.

If Defendant only bought cigarettes from authorized wholesalers and counterfeit

cigarettes were found on Defendant's premises, then logic would dictate that Defendant received

counterfeit cigarettes from its wholesalers. However, McCord visited all of the wholesalers

where Defendant reported it made purchases, and no counterfeit cigarettes were found. (Def.'s

Resp. Ex. 5, McCord Dep. 43:14-25).

Regarding the chain of custody, Defendant points out that both Daniels and Bullock

turned over the counterfeit cigarettes to McCord. Daniels testimony states:

> Q:   The two packs of cigarettes that you had taken that you felt were
>       counterfeit, what did you do with them?
> A:   I took them to the office.
> Q:   And turned them over to?
> A:   Michael McCord.
> Q:   Did you write a report or something at that point or something?
> A:   No, I didn't write a report on it.
> Q:   What happened after you gave them to Mike McCord?
> A:   I had to sign off that I had got these from Van Dyke Liquor. I gave them
>       my S-26-As, and then at that point Michael takes them and distributes
>       them to the necessary parties involved.

(Pl.'s Br. Ex. 4, Daniels Dep. 43:14-25; 44:1-2). Likewise, Bullock testified:

> Q:   Did you subsequently put the pack of cigarettes on evidence?
> A:   I gave the pack to Mike when we got in the car after I left the store and got
>       in the car.
> Q:   The counterfeit cigarettes, you gave to Mike McCord?
> A:   Yes.

14

(Pl.'s Br. Ex. 8, Bullock Dep. 9:15-20).

It appears from the testimony that McCord might have erred in filling out the Chain of Custody papers. Accepting that the Chain of Custody papers were not filled out correctly, Defendant only insinuates that McCord used his access to counterfeit cigarettes to replace the cigarettes given to him by Daniels and Bullocks with counterfeits. Defendant offers no evidence that McCord kept in his possession counterfeit cigarettes that he removed from stores, nor does Defendant offer evidence that had counterfeit cigarettes in his possession at the time the Chain of Custody papers were filled out. Defendant only alleges that he had access to counterfeit cigarettes at the time, in the course of his employment with Plaintiff. Presumably, the counterfeit cigarettes Defendant alleges McCord possessed were removed from other stores.

Taking into account Defendant's above argument and the cumulative effect of the likelihood of confusion factors, this Court finds that, as a matter of law, a likelihood of consumer confusion exists. Indeed, Defendant failed to present any evidence to dispute the fact that consumer would be confused by the counterfeit product located in its inventory.

Taking the facts in a light most favorable to the Defendant, there is no question of fact as to whether the cigarettes removed from Defendant by Daniels and Bullock were counterfeit. Defendant's "grasping for straws" attempt to allege that McCord used counterfeit cigarettes in his possession to "frame" Defendant is not supported by any evidence in the record. Accordingly, the Court grants Plaintiff's Motion for Summary Judgment as to Liability on its claim of trade infringement under 15 U.S.C. § 1114(1)(a).

### 2. False Designation

The Court's finding that a likelihood of confusion exists is also dispositive on Plaintiff's

claims of false designation.

> A person engages in unfair competition if he or she, on or in connection with any goods or services, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact in a manner that is likely to cause confusion.

15 U.S.C. § 1125(a)(1)(A). To established false designation, a plaintiff must demonstrate that: (1) the false designation has a substantial economic effect on interstate commerce; and (2) the false designation creates a likelihood of confusion. *Johnson v. Jones*, 149 F.3d at 502. As such, part of the prima facie case of false designation requires the plaintiff to show that likelihood of confusion. The factors for determining likelihood of confusion for a false designation of origin claim under § 1125 are identical to those for a trademark infringement claim under § 1114. *Champions Golf Club, Inc.*, 78 F.3d at 1123.

Since Plaintiff showed the confusing similarity of the marks above, all that remains is for Plaintiff to show that the false designation had a substantial economic effect on interstate commerce. Defendant argues that the sale of one to three packs of cigarettes to Plaintiff's employees does not result in a substantial economic effect on interstate commerce. However, the sale of any counterfeit cigarettes hinders Plaintiff's ability to conduct interstate cigarette sales and thus, it affects interstate commerce. And since counterfeit products were being offered for sale at Defendant's establishment, in direct competition with Plaintiff's authentic cigarettes, there can be no dispute of fact that the counterfeit cigarettes had an economic effect on interstate commerce. Indeed, the Court found above that Defendant's sale of counterfeit cigarettes creates consumer confusion. Therefore, the Court finds that this issue does not support Defendant's argument that summary judgment should be denied.

16

Accordingly, for the reasons stated in under the Court's trademark infringement analysis, *supra*, the Court grants Plaintiff's Motion for Summary Judgment as to Liability on its claim of False Designation under 15 U.S.C. 1125(a)(1).

### 3.      State Law Claims

Plaintiff argues that the standard for Michigan's unfair competition statute, Michigan's common law unfair competition, and the Michigan Consumer Protection Act ("MCPA") is the same as used for federal trademark infringement and federal unfair competition and thus summary judgment should be granted.

Michigan's common law rule was codified in Mich. Comp. Law § 429.42(a), which provides:

> [a]ny person who shall:
>
> (A) Use, without the consent of the registrant, any reproduction, counterfeit, copy or colorable imitation of a mark registered under this act in connection with the sale, offering for sale, or advertising of any goods or services on or in connection with which such use is likely to cause confusion or mistake or to deceive as to the source of origin of such goods or services. . . . Is liable to a civil action by the owner of the registered mark for any or all of the remedies provided in section 13 . . .

M.C.L. § 429.42(a).  The MCPA prohibits "unfair, unconscionable, or deceptive methods, acts or practices in the conduct of trade or commerce." M.C.L. § 445.903(1).

The Sixth Circuit noted in *Carson v. Here's Johnny Portable Toilets, Inc*., that Lanham Act and Michigan state law unfair competition claims were both governed by the same standards. 698 F.2d at 833.  Likewise, common law unfair competition claims and unfair business practices under the Michigan Consumer Protection Act are governed by the same standards as the Lanham Act.  *Wynn Oil*, 943 F.2d at 605; *Wilcom Pty. Ltd. v. Endless Visions*,

17

128 F. Supp. 2d 1027, 1033 (E.D. Mich. 1998); *see also Microsoft Corp. v. Compusource Distribs., Inc.*, 115 F. Supp. 2d 800, 807 (E.D. Mich. 2000) (citing *Homeowners Group*, 931 F.2d at 1105 n.1 ("The applicable standard under the MCPA and under Michigan common law is the same as the tests for federal trademark infringement and federal unfair competition under 15 U.S.C. §§ 1114(1) and 1125(a): whether confusion is likely.")).

Since Plaintiff has established the central issue in its state law claims - customer confusion - the Court grants Plaintiff's Motion for Summary Judgment as to liability on its state law claims.

### 4.  Dilution

The Lanham Act also prohibits the "dilution" of famous marks. 15 U.S.C. § 1125(c).  A claim of dilution under 15 U.S.C. § 1125(c) consists of the following elements: (1) the senior mark must be famous; (2) it must be distinctive; (3) the junior use must be a commercial use in commerce; (4) it must begin after the senior mark has become famous; and (5) it must cause dilution of the distinctive quality of the senior mark.  *Kellogg Co. v. Exxon Corp.*, 209 F.3d 562, 577 (6th Cir. 2000).

It is undisputed that Plaintiff owns the marks for its NEWPORT brand cigarettes, and that it has made commercial use of the mark.  The NEWPORT marks are distinctive.  The counterfeit cigarettes were removed and purchased from Defendant's premises in 2006, at date after which Plaintiff's marks became famous.  Defendant does not contest that Plaintiff's marks were famous prior the finding of the counterfeit cigarettes.

Defendant argues that Plaintiff has to show actual dilution, but has only shown similarity of the packaging, leaving a question of fact for the jury.

18

Indeed, Defendant's mark and Plaintiff's mark are identical.  Thus, actual dilution can be reliably proven.  *See Moseley v. Secret Catalogue, Inc.*, 537 U.S. 418, 434 (2003) ("Direct evidence of dilution . . . will not be necessary if actual dilution can reliably be proved through circumstantial evidence – the obvious case is one where the junior and senior marks are identical.").  "The closer the junior user comes to the senior's area of commerce, the more likely it is that dilution will result from the use of a similar mark."  *Ford Motor Co. v. Lloyd Design Corp.*, 184 F.Supp.2d 665, 680 (E.D. Mich. 2002).

As a result of Defendant selling cigarettes that used marks identical to the registered marks, the Court finds that the final element of the dilution analysis is established because the counterfeit marks were very similar and were used on similar goods.  Defendant's use of the mark on counterfeit cigarettes dilutes the quality of Plaintiff's mark because it diminishes the ability of the mark to identify and distinguish the goods.  *Audi AG v. D'Amato,* 381 F.Supp.2d 644, 664-65 (E.D. Mich. 2005).

Accordingly, the Court grants summary judgment as to liability on Plaintiff's dilution claim under 15 U.S.C. § 1125(c).

### 5.    Statutory Damages under 15 U.S.C. § 1117(c)

Plaintiff argues that Defendant violated the relevant provision of the Lanham Act willfully or with a reckless disregard for Plaintiff's protected trademarks and therefore the statutory damages should be  increased.   Plaintiff requests a finding of willfulness and a separate haring to assess the amount of statutory damages to which it is entitled.

Under the statutory damages provision of the Lanham Act, a trademark owner may elect, at any time before final judgment is rendered, to recover an award of statutory damages for any

use of a counterfeit mark in connection with the sale, offering for sale, or distribution of goods or services.  15 U.S.C. § 1117(c).

> In a case involving the use of a counterfeit mark (as defined in section 34(d) (15 U.S.C. 1116(d)) in connection with the sale, offering for sale, or distribution of goods or services, the plaintiff may elect, at any time before final judgment is rendered by the trial court, to recover, instead of actual damages and profits under subsection (a), an award of statutory damages for any such use in connection with the sale, offering for sale, or distribution of goods or services in the amount of–
>
>> (1) not less than $ 500 or more than $ 100,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just; or
>> (2) if the court finds that the use of the counterfeit mark was *willful*, not more than $ 1,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just.

15 U.S.C. § 1117(c) (emphasis added).  "In the civil context, 'willful conduct denotes intentional, knowing and voluntary acts. It may also indicate a reckless disregard for obvious or known risks.'" *Thomsen v. United States*, 887 F.2d 12, 17 (1st Cir. 1989).  "Willful infringement may be attributed to the defendant's actions where he had knowledge that his conduct constituted infringement or where he showed a reckless disregard for the owner's rights."  *Wildlife Express Corp. v. Carol Wright Sales, Inc*., 18 F.3d 502, 511 (7th Cir. 1994).

Thus, the present statutory minimum and maximum are $500 and $100,000 per counterfeit mark per type of goods or services sold for non-willful infringement, 15 U.S.C. § 1117(c)(1).  A court may award up to $ 1,000,000 per counterfeit mark if the plaintiff proves that the infringement was committed willfully. 15 U.S.C. § 1117(c)(2).

In support of its assertion that Defendant willfully used a counterfeit mark, Plaintiff argues that: (1) Defendant's business records demonstrate that there was a dramatic decline in Defendant's purchase of NEWPORT King cigarettes in the soft pack immediately prior to the

time that counterfeit cigarettes were discovered; and (2) Defendant's defense - that there were no NEWPORT King size cigarettes in the store on March 11, 2005, and thus Daniels could not have found counterfeit cigarettes that day -  is inconsistent with Defendant's owner's testimony regarding his purchasing patter and Defendant's records.

Defendant's explanation for the decline in the need for NEWPORT King cigarettes was that: (1) the warehouse sometimes did not have cigarettes when he or someone on his behalf went to purchase cigarettes; and (2) Plaintiff's own records show that Defendant's cigarette sales varied considerably from quarter to quarter.

After reviewing the record, the Court finds that, taking the evidence in the light most favorable to the non-moving party, Plaintiff has failed to show that Defendant knew that some of the cigarettes at the store were counterfeit, or that Defendant sold the counterfeit cigarettes after having knowledge that the cigarettes were counterfeit.  Thus, summary judgment is not appropriate because the Court finds a genuine issue of material fact whether Defendants willfully used a counterfeit mark as a matter of law.

Accordingly, the Court denies Plaintiff's Motion for Summary Judgment to the extent it asks for a finding of willfulness on the part of Defendant.

## III.     CONCLUSION

For the reasons stated above, the Court GRANTS IN PART and DENIES IN PART Plaintiff's Motion for Summary Judgment.  The Court GRANTS Plaintiff's Motion for Summary Judgment as to Liability on Counts I – VI.  The Court DENIES Plaintiff's motion to the extent it asks for a finding of willfulness on the part of the Defendant regarding statutory damages under 15 U.S.C. § 1117(c).

**SO ORDERED.**

s/Paul D. Borman
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated:  January 23, 2007

CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on
January 23, 2007.

s/Denise Goodine
Case Manager

22